**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HEATHER DOE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-3287** |
| | : | |
| **DOROTHY E. AUSTIN** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **February 29, 2024**

We expect responsible adults hired as a school aide for a kindergartener challenged with autism on a public-school bus would protect the child especially on his third day of school. We instead today review the potential liability for the school district employer and bus aide after the aide admitted hitting and bruising the kindergartener as discipline for repeatedly reciting lines from *Toy Story* on his third day on the bus in September.   The child pleads a substantive due process civil rights claim against the aide. We need discovery to understand the extent of the child's physical injuries. But the child and his mother do not plead facts allowing us to find the school district or its transportation entity (presumably with some role in managing the busing) knew of the risk of this potential conduct or otherwise may incur some form of municipal liability. And the child must exhaust administrative remedies before seeking some form of relief under federal statutes possibly applying to the child on a public-school bus. We dismiss the claims against the school district and its transportation entity without prejudice.

The child and his mother (subject to our later standing analysis) may proceed against the aide on a civil rights substantive due process claim, assault and battery, and the emotional distress claims.

## I.    Alleged facts

Five-year old R.S.'s family chose to live in Central Bucks School District when he began kindergarten at the District's Buckingham Elementary School in Fall 2021.[1] The District provides R.S. bus transportation to and from school.[2] The United States provides funding to the District and its allegedly separate Transportation entity.[3]

R.S. is challenged by autism.[4] Children suffering from autism respond differently to discipline than those not suffering from autism.[5] Children suffering from autism may engage in aggressive, socially unacceptable, or rude behavior when subject to discipline.[6] R.S. received his autism diagnosis before his third day of kindergarten, September 1, 2021.[7]

The District or its Transportation entity placed kindergartener R.S. on a bus designated to transport children with special needs like autism to and from Buckingham Elementary School.[8] The School District and its Transportation entity assigned white-haired Dorothy Austin to serve as the bus's aide.[9] The School District and its Transportation entity did not subject Ms. Austin to personality, psychological, or other tests to ensure Ms. Austin had the personality and patience to work with children suffering from autism or other emotional disorders.[10] The School District and its Transportation entity did not instruct or train Ms. Austin to supervise children suffering from autism or other emotional conditions.[11] The School District and its Transportation entity did not disclose R.S.'s autism diagnosis to Ms. Austin before R.S. began kindergarten at Buckingham Elementary School.[12]

### Ms. Austin hits R.S. because he recited from "Toy Story" on his third day on the bus.

R.S. recited and repeated dialogue between characters in the movie *Toy Story* while on the bus on September 1, 2021.[13] Repetition is a byproduct of R.S.'s autism diagnosis.[14] R.S. did not repeat the *Toy Story* dialogue in a threatening or aggressive tone.[15] Ms. Austin perceived

R.S.'s recitation of the *Toy Story* dialogue as disrespectful to her and struck R.S. in his head, face, chin, and neck area.[16] Ms. Austin bruised R.S. but he did not suffer long-term physical injuries.[17]

R.S. cried hysterically after Ms. Austin struck him and R.S. refused to leave the bus at his stop.[18] R.S.'s Mother, Heather Doe, carried R.S. off the bus as he cried and refused the leave the bus.[19] Ms. Doe asked the driver and Ms. Austin if anything happened during the bus ride to cause R.S. to cry.[20] Both the driver and Ms. Austin denied anything happening to cause R.S. to cry.[21] R.S. explained to Ms. Doe the "white hair lady" hit him during the bus ride home.[22]

Ms. Doe filed criminal charges against Ms. Austin.[23] The Commonwealth charged Ms. Austin with aggravated assault against a victim less than six years old, simple assault, and harassment by subjecting another to physical contact.[24] Ms. Austin pleaded guilty to one count of criminal harassment.[25]

### The effects of Ms. Austin striking R.S.

R.S. now suffers from post-traumatic stress disorder, an exacerbation of his anxiety disorder, emotional and psychological damage, bruising, enhancement of autism and the autism-related symptoms from which R.S. suffers, and regression of pre-assault autism progress.[26] R.S. is afraid of adults, especially those with white hair.[27] R.S. suffers from nightmares.[28] R.S. is afraid to go to school.[29]

Ms. Doe suffers from severe emotional injury from witnessing R.S. process being struck by Ms. Austin.[30] Ms. Doe has and will continue to spend money for R.S.'s medical care to treat R.S.'s psychological injuries stemming from Ms. Austin's attack.[31]

## II.    Analysis

Ms. Doe and R.S. now sue Central Bucks School District, Central Bucks School District Transportation, and Ms. Austin.[32] They seek civil rights recovery alleging procedural and substantive due process claims against the School District and its Transportation entity arguing the entities failed to properly train Ms. Austin to supervise students suffering emotional disorders like R.S.[33] Ms. Doe and R.S. allege the School District and its Transportation entity violated the Individuals with Disabilities Act because they denied R.S. an appropriate education.[34] Ms. Doe and R.S. allege Rehabilitation Act and Americans with Disabilities Act discrimination claims against the District and its Transportation entity arguing the entities denied R.S. the benefit of the entities' educational program of safe school bus transportation because of his autism.[35] R.S. alleges a section 1983 substantive due process claim against Ms. Austin arguing she engaged in conscious-shocking behavior by striking a young child suffering from autism.[36] Ms. Doe and R.S. allege assault and battery, negligent infliction of emotional distress, and intentional infliction of emotional distress against Ms. Austin based on her striking R.S.[37]

The District and its Transportation entity move to dismiss Ms. Doe and R.S.'s section 1983 claim arguing Ms. Doe and R.S. do not to identify the School District and Transportation arm had a custom, policy, or practice of failing to train its bus aides because Ms. Doe and R.S. do not plead a pattern of abuse by bus aides against bus riders.[38] The School District and its Transportation entity move to dismiss Ms. Doe and R.S.'s Individuals with Disabilities Education Act claim arguing Ms. Doe and R.S. cannot allege an Individuals with Disabilities Education Act claim because the Act does not create a private right of action for damages.[39] The School District and its Transportation entity move to dismiss Ms. Doe and R.S.'s Rehabilitation

Act and Americans with Disabilities Act discrimination claims arguing Ms. Doe and R.S. do not allege the School District and its Transportation entity intentionally discriminated against R.S.[40]

Ms. Austin separately moves to dismiss Ms. Doe and R.S.'s civil rights claim arguing Ms. Doe does not allege harm stemming from a conscious-shocking act, the physical harm R.S. suffered from Ms. Austin's strikes is not sufficiently severe to plead a substantive due process claim, R.S. cannot bring a substantive due process claim alleging psychological harm, and qualified immunity protects Ms. Austin because Ms. Doe and R.S. do not plead a constitutional harm.[41] Ms. Austin moves to dismiss Ms. Doe and R.S.'s state law tort claims if we dismiss Ms. Doe and R.S.'s constitutional claims against Ms. Austin under supplemental jurisdiction principles.[42] Ms. Austin does not otherwise challenge the sufficiency of Ms. Doe and R.S.'s state law claims.[43]

We dismiss Ms. Doe and R.S.'s section 1983 claim against the District and its Transportation entity without prejudice.[44] Ms. Doe and R.S. do not plead the District and its Transportation entity failed to train employees who work with children suffering emotional disorders and this failure caused R.S. to suffer a constitutional violation. We dismiss R.S.'s Individuals with Disabilities Education Act claim against the District and its Transportation entity without prejudice. Congress in the Individuals with Disabilities Education Act did not create a private remedy for money damages and R.S. failed to exhaust their administrative remedies under the Act. We dismiss R.S.'s Rehabilitation Act and Americans with Disabilities Act discrimination claims without prejudice. R.S. pleads education harms requiring exhaustion under the Individuals with Disabilities Education Act.

We allow R.S.'s section 1983 claim against Ms. Austin to proceed finding R.S. adequately pleaded Ms. Austin's strikes and R.S.'s and his resulting physical injuries may shock

the conscience to proceed on the section 1983 substantive due process claim. We do not dismiss Ms. Doe and R.S.'s state law claims against Ms. Austin because Ms. Austin does not challenge their factual sufficiency.

### A. Ms. Doe and R.S. do not plead a section 1983 substantive due process claim against the District and its Transportation entity.

Ms. Doe and R.S. allege the School District and its Transportation entity violated Ms. Doe and R.S.'s substantive due process rights by failing to train the District and Transportation employees to supervise children with emotional disorders.[45] Ms. Doe and R.S. allege the District and its Transportation entity's failure to instruct its employees not to physically assault students "create[ed] an environment encouraging such unconstitutional conduct."[46] Ms. Doe and R.S. allege the District's and Transportation entity's failure to train its employees increased the likelihood Ms. Austin would strike a child suffering from an emotional disorder.[47] The District and its Transportation entity counter Ms. Doe and R.S. do not plead a section 1983 municipal liability claim because Ms. Doe and R.S. do not allege they engaged in a custom, practice, or policy of failing to train its employees to supervise children with emotional disorders.[48] We find Ms. Doe and R.S. do not plead a section 1983 municipal liability claim against the District or its Transportation entity because Ms. Doe and R.S. do not plead (after two attempts) facts the District or its Transportation entity failed to train Ms. Austin in supervising children with emotional disorders.

We begin by recognizing a school district may be liable for the constitutional violations its employees commit against schoolchildren suffering emotional disorders through municipal liability.[49] The injured child suffering from an emotional disorder can allege (consistent with Rule 11) either (1) the district engaged in a policy, practice, or custom which caused the child's injury or (2) the district failed to train the employee who injured the child.[50] The injured child

suffering from a pre-existing emotional disorder must allege the school district's failure to train its employees constitutes a "deliberate indifference to the [child's] rights."[51] An injured child suffering from an emotional disorder pleads the school district's deliberate indifference where "(1) [school district] policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[52]

We are guided by Judge Mehalchick's analysis dismissing a child's section 1983 municipal liability claim against a school district because the child did not allege facts about the school district's failure to train the assaulting employee.[53] The child in *Rogers v. Pocono Mountain East High School* suffered from Conduct Disorder, Attention Deficit/Hyperactivity Disorder, and Opposition Defiance Disorder.[54] The school district permitted the child to wear headphones between classes as part of its accommodations for the child's emotional disorders.[55] A teacher approached the child and requested the child remove his headphones.[56] The child refused to remove his headphones and fought the teacher and suffered injuries.[57] The child sued the school district alleging the school district's failure to "instruct its faculty and staff members" caused the fight and "amounted to a deliberate indifference to and callousness [sic] disregard to the [child's] rights."[58] Judge Mehalchick dismissed the child's section 1983 municipal liability claim without prejudice finding the child did not plead the school district failed to train its employees nor how the alleged failure to train constituted a deliberate indifference to the child's constitutional rights.[59]

We are also guided by Judge Leeson dismissing a child's section 1983 municipal liability claim against a school district because the child did not plead the teacher or any other district employee previously used force against children suffering from emotional disorders.[60] The child

in *Mosser* disrupted her first-grade classmates and engaged in "otherwise uncontrollable behaviors."[61] The child's parents requested the school district move the child to a different classroom but the principal and superintendent declined to reassign the child despite knowing the child's teacher "felt overwhelmed and incapable of handling" the child.[62] The child's first-grade teacher grabbed the child by the throat and dug her nails into the child's neck during the child's outburst.[63] The child sued the school district employing the teacher arguing the school district's failure to train the teacher against using force in the classroom violated the child's substantive due process rights.[64] Judge Leeson dismissed the child's claim without prejudice finding the child's failure to allege "specific prior uses of force in the classroom" precluded the child from alleging a failure to train claim.[65]

We are also persuaded by Judge Caputo addressing contrasting facts and denying dismissal of a child's section 1983 municipal liability claim where the child alleged both the school district's knowledge of his autism diagnosis and instances of physical abuse predating the challenged conduct.[66] The child in *Bonham* suffered from, among other things, autism and the school district provided the child specialized transportation because of his autism.[67] The child's mother informed a school district employee of a January 21, 2016 incident involving a transportation aid "slapp[ing] [the child's] face and smack[ing] his hands for disruptive behavior."[68] A bus-mate of the child informed the bus-mate's mother of a separate instance where the transportation aide pulled the child's hair, slapped the child's face, and sat on him to prevent the child's emotional outbursts.[69] The bus-mate provided his mother with video evidence of a third incident involving the transportation aide screaming in the child's face, hitting the child, grabbing the child by the hair and "ripping his head and neck over the top of his car seat harness."[70] The child sued the school district alleging the school district failed to train the

transportation aide to safely supervise children with emotional disorders.[71] Judge Caputo denied dismissal finding the child pleaded the district and its transportation arm knew its transportation aides "would encounter difficult and tense situations" involving children suffering from emotional disorders and the transportation aides engaged in a "history of mishandling" children suffering from emotional disorders.[72]

Ms. Doe and R.S. do not plead facts (after two attempts) the District or its Transportation entity failed to train Ms. Austin sufficient to create municipal liability. Our Court of Appeals requires children suffering from pre-existing emotional disorders plead a history of mishandling children and the wrong choice by the supervising school district employee will "frequently cause a deprivation of constitutional rights."[73]

Ms. Doe and R.S. do not plead District employees engaged in a history of mishandling children or a frequent and resulting deprivation of constitutional rights. Ms. Doe and R.S. instead plead only Ms. Austin's striking R.S.[74] Ms. Doe and R.S.'s instance of employee abuse is like the facts Judge Leeson dismissed in *Mosser*. Ms. Doe and R.S. plead one instance of transportation aide abuse unlike the child in *Bonham* who pleaded several instances of abuse. Ms. Doe and R.S. asks we infer a district-wide system of abuse against children suffering from emotional disorders from Ms. Austin's one instance of abuse against R.S. But our Court of Appeals requires more to allege municipal liability stemming from a failure to train a school district employee.

We dismiss Ms. Doe's and R.S's civil rights claims against the District and its Transportation entity without prejudice to Ms. Doe and R.S. possibly discovering facts of a history of abuse against children suffering from emotional disorders.

**B. R.S. did not exhaust the Individuals with Disabilities Education Act claim against the District and its Transportation entity.**

Ms. Doe and R.S. allege the District and its Transportation entity violated the Individuals with Disabilities Education Act by denying R.S. "an appropriate education."[75] Ms. Doe and R.S. argue they need not exhaust their administrative remedies under the Individuals with Disabilities Education Act because the District's and Transportation entity's obligations to provide educational services will be decided in this litigation and the Individuals with Disabilities Education Act does not authorize the award of money damages.[76] The District and its Transportation entity counter Ms. Doe and R.S. do not plead a statutory violation because Congress, in the Individuals with Disabilities Education Act, does not permit a claim for money damages.[77] We find R.S. does not plead an Individuals with Disabilities Education Act claim because R.S. did not exhaust his administrative remedies. We dismiss without prejudice.

Our Court of Appeals requires children alleging an Individuals with Disabilities Education Act claim must first exhaust their administrative remedies if the child seeks relief from denial of a free appropriate public education even if the child requests money damages.[78] Our Court of Appeals interprets a child's claim as seeking relief from denial of a free appropriate public education where the child [could not] "'have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school,' and, conversely, whether 'an adult at the school ... [could not] have pressed essentially the same grievance.'"[79]

The child in *J.L. by & through Leduc v. Wyoming Valley West School District* suffered from emotional disorders rendering him nonverbal and unable to "conform to normal behavioral standards."[80] The school district provided the child special transportation to and from school.[81] The child's parents observed the child's bus driver "painfully, forcefully and involuntarily lock" the child into his seat twice and sued the school district seeking money damages.[82] The child

pleaded the driver's use of the restraint denied the child "educational rights," "educational programs," and "educational services."[83] Our Court of Appeals upheld dismissal of the child's Individuals with Disabilities Education Act claim holding the use of restraints would not have occurred outside the school setting and a nonstudent could not plead the same grievance requiring the child to first exhaust his administrative remedies under the Individuals with Disabilities Education Act before suing.[84]

R.S.'s Individuals with Disabilities Education Act claim also seeks relief from a denial of education services requiring R.S. to first exhaust his statutory administrative remedies. Like the child in *J.L. by & through Leduc*, R.S. alleges the School District and its Transportation arm denied R.S. "an appropriate education."[85] R.S. alleges he failed to exhaust his administrative remedies under the Individuals with Disabilities Education Act because it would be futile.[86]

Our Court of Appeals requires we dismiss R.S.'s Individuals with Disabilities Education Act claim because R.S. failed to exhaust his administrative remedies under the Individuals with Disabilities Education Act for his education-centric claim even though R.S. seeks money damages. We dismiss R.S.'s Individuals with Disabilities Education Act claim without prejudice.

### C. R.S. does not plead exhausted Rehabilitation Act and Americans with Disabilities Act claims.

Ms. Doe and R.S. allege the District and its Transportation entity violated the anti-discrimination sections of the Rehabilitation Act and the Americans with Disabilities Act by denying R.S. the public school education program benefit of fair and safe transportation.[87] The School District and its Transportation entity counter Ms. Doe and R.S. do not plead discrimination claims under the Rehabilitation Act and the Americans with Disabilities Act because Ms. Doe and R.S. do not allege a causal connection between a District or Transportation entity decision and Ms. Doe or R.S.'s injuries.[88] We find R.S. does not plead discrimination

11

claims under the Rehabilitation Act or the Americans with Disabilities Act as he did not exhaust their administrative remedies under the Individuals with Disabilities Education Act.

Our Court of Appeals upheld dismissal of a child's discrimination claims under the Rehabilitation Act and the Americans with Disabilities Act because the child alleged denial of education benefits.[89] The child in *S.D. by A.D. v. Haddon Heights Board of Education* suffered from chronic sinusitis and intermittent asthma limiting him in "the life activity of learning."[90] The child frequently missed class and alleged the board of education failed to accommodate his disabilities by not providing "homebound instruction or other supplemental instruction to enable him to keep up with the curriculum."[91] The child sued the board of education alleging discrimination claims under the Rehabilitation Act and the Americans with Disabilities Act alleging the board's failure to accommodate his frequent illnesses denied him "educational opportunities" and other benefits of attending school.[92] Our Court of Appeals highlighted the Supreme Court's teaching in *Fry* a child cannot subvert the Individuals with Disabilities Education Act's administrative remedies by alleging denial of educational benefits under different statutes.[93] Our Court of Appeals upheld dismissal of the child's Rehabilitation Act and Americans with Disabilities Act claims holding the child's failure to exhaust his Individuals with Disabilities Education Act administrative remedies prevented him from suing under different statutes alleging a denial of education-based benefits.[94]

R.S. alleges claimed educational benefit injuries as Rehabilitation Act and Americans with Disabilities Act discrimination claims. R.S. alleges the District and its Transportation entity denied R.S. "fair and safe treatment on school buses" and the "public school education program" benefit of "safe school bus transportation."[95] R.S. alleges the exact type of denied educational

benefits our Court of Appeals requires children seek redress through the Individuals with Disabilities Education Act's administrative remedies.[96]

We dismiss R.S.'s Rehabilitation Act and Americans with Disabilities Act discrimination claims without prejudice.

### D.  R.S. pleads a section 1983 substantive due process claim against Ms. Austin.

R.S. alleges Ms. Austin violated his substantive due process by striking him in the head, face, chin, and neck area.[97] R.S. argues an attack on a young child suffering from autism is "shocking to the conscience of any reasonable person."[98] R.S. alleges Ms. Austin's strikes caused him bruising.[99] Ms. Austin counters the physical harm R.S. suffered is not sufficiently severe to plead a substantive due process claim, R.S. cannot bring a section 1983 substantive due process claim alleging psychological harm, and qualified immunity protects Ms. Austin because R.S. does not plead a constitutional harm.[100] We find R.S. pleads a substantive due process claim because R.S. alleges he suffered bruising from Ms. Austin's strikes subject to discovery allowing us to more fully evaluate the extent of these physical injuries upon a child less than six years old.

Our Court of Appeals analyzes school children substantive due process claims as excessive force claims.[101] Our Court of Appeals requires children pleading excessive force claims against school district employees allege "[1] [w]as there a pedagogical justification for the use of force?; [2] [w]as the force utilized excessive to meet the legitimate objective in this situation?; [3] [w]as the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and [4] [w]as there a serious injury?"[102]

We are guided by Judge Mehalchick dismissing a child's excessive force claim against a teacher for failing to allege physical injury stemming from a hallway fight.[103] The child in

*Rogers v. Pocono Mountain East High School* got into a fight with a teacher after the teacher refused to follow the child's disability accommodations.[104] The teacher "pressed his forearm" against the child's chest during the fight.[105] The child did not suffer physical injuries from the fight.[106] Chief Judge Mehalchick dismissed the child's excessive force claim without prejudice because his lack of resulting physical injury did not shock the conscience sufficient to plead an excessive force claim.[107]

Judge Leeson dismissed a child's excessive force claim where the child failed to allege serious injury from the teacher's attack.[108] The child in *Mosser v. McWilliams* sued her first grade teacher after the teacher grabbed the child by the throat and dug her nails into the child's neck.[109] The child suffered scratches, abrasions, and gouge marks on her neck and throat.[110] The child sued her teacher alleging an excessive force claim stemming from the injuries.[111] Judge Leeson dismissed the excessive force claim without prejudice finding the child's failure to suffer "lingering pain" or "require[] continuing treatment" resulting from the attack prevented the child from alleging an excessive force claim.[112]

We are also guided by Judge Pappert confronting contrasting facts and denying dismissal of a child's excessive force claim against the child's fifth-grade teacher.[113] The child in *Tucker v. School District of Philadelphia* suffered from a learning disability and the school district enrolled the child in special education.[114] The child's special education teacher "grabbed [the child] by the neck and choked him" after the child did not put his pencil in the appropriate place.[115] The teacher proceeded to "repeatedly push [the child's] head and body against the school room wall."[116] The child sued the teacher alleging an excessive force claim.[117] Judge Pappert found the teacher's physical abuse of the child constituted excessive force.[118]

R.S. pleads he suffered bruising from Ms. Austin striking him in the head, face, chin, and neck area.[119] R.S. admits he did not suffer long-term physical injuries from Ms. Austin striking him in the face like the child in *Rogers*. R.S.'s pleaded injuries arguably fall between those suffered by the children in *Rogers* and *Mosser*. Bruising is more severe than no injury at all as experienced by the child in *Rogers*. But bruising may not be as severe as the scratches, gouges, and abrasions the child in *Mosser* suffered and Judge Leeson found insufficient to plead an excessive force claim. Striking a child may not be as violent as the repeated choking and slamming the child in *Tucker* experienced and Judge Pappert found sufficient to plead an excessive force claim.

We need more facts about Ms. Austin's strikes and the extent of R.S.'s physical injuries before dismissing his excessive force claim. Excessive force claims require pleaded facts of severe conduct and physical injury. R.S. pleads physical injury. We allow R.S.'s excessive force claims against Ms. Austin to proceed.[120]

### E. We allow Ms. Doe's and R.S.'s state law claims to proceed against Ms. Austin.

R.S. pleads assault and battery, and Ms. Doe and R.S. plead negligent infliction of emotional distress, and intentional infliction of emotional distress claims against Ms. Austin.[121] Ms. Austin counters we must dismiss Ms. Doe's and R.S.'s state law claims because we must dismiss Ms. Doe's and R.S.'s federal claims against Ms. Austin.[122] We find Ms. Doe and R.S. plead a substantive due process claim against Ms. Austin under our federal question jurisdiction. We will exercise our supplemental jurisdiction over the plead state law claims.

Ms. Austin does not challenge the sufficiency of Ms. Doe's and R.S.'s state law claims. We find no basis to *sua sponte* question subject matter jurisdiction, proper venue, or ripeness. We will *sua sponte* address Ms. Doe's standing in her individual capacity for the plead state law

claims. We allow Ms. Doe's and R.S.'s state law claims as they relate to Ms. Austin to proceed today.[123]

## III.   Conclusion

Heather Doe and her young son challenged by autism plead a substantive due process claim sounding in excessive force against the bus aide Ms. Austin. This civil rights claim may proceed into discovery to determine the amount of R.S.'s physical injury arising from Ms. Austin admittedly striking him for repeatedly reciting lines from *Toy Story* in his third day on the school bus as a kindergarten student. Ms. Austin does not challenge the sufficiency of the state law claims and they may proceed against her as well. We dismiss the remaining claims without prejudice.

---

[1] Second amended Complaint, ECF No. 27 ¶ 15. The Plaintiffs plead R.S.'s full name including a surname beginning with the letter "S" in the Complaint. Each count from the Complaint lists R.S. with a surname beginning with "J."

[2] *Id.* ¶ 19.

[3] *Id.* ¶ 17. We have no basis to find the Transportation entity is a separate legal entity subject to suit other than Plaintiffs' allegation it "is an entity duly organized and existing under the laws of the Commonwealth of Pennsylvania." *Id.* ¶ 10.

[4] *Id.* ¶ 18.

[5] *Id.* ¶ 25.

[6] *Id.*

[7] *Id.* ¶¶ 15, 18.

[8] *Id.* ¶ 20.

[9] *Id.* ¶ 21.

[10] *Id.* ¶ 22.

[11] *Id.* ¶ 23.

---

[12] *Id.* ¶ 24.

[13] *Id.* ¶ 26.

[14] *Id.*

[15] *Id.*

[16] *Id.* ¶¶ 26, 27.

[17] *Id.* ¶ 28.

[18] *Id.* ¶ 35.

[19] *Id.* ¶ 36.

[20] *Id.* ¶ 37.

[21] *Id.* ¶ 38.

[22] *Id.* ¶ 40.

[23] *Id.* ¶ 47.

[24] *Id.* ¶ 48.

[25] *Id.* ¶ 49.

[26] *Id.* ¶ 52.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* ¶ 55.

[31] *Id.* ¶ 56.

[32] Ms. Doe's Article III standing in her individual capacity for claims other than state law emotional distress is unclear. We will address Ms. Doe's individual capacity standing for the federal claims at the pretrial conference.

[33] ECF No. 27 ¶¶ 64–65.

[34] *Id.* ¶ 74(d).

[35] *Id.* ¶¶ 78–99.

[36] *Id.* ¶¶ 27, 30.

[37] *Id.* ¶¶ 100–05.

[38] ECF No. 28-1 at 4–8.

[39] *Id.* at 8.

[40] *Id.* at 8–10.

[41] ECF No. 30-1 at 5–13.

[42] *Id.* at 13.

[43] *See id.*

[44] Ms. Doe and R.S. first sued in August 2023. ECF No. 1. The parties twice stipulated to allow Ms. Austin additional time to respond to Ms. Doe and R.S.'s claims. ECF Nos. 7, 9. The parties next stipulated to allow Ms. Doe and R.S. file an amended Complaint not adding new claims. ECF No. 14. Ms. Doe and R.S. filed an amended Complaint in December 2023. ECF No. 16. The parties again stipulated to allow Ms. Doe and R.S. file a second amended Complaint in late-January 2024. ECF No. 25. The District, its Transportation entity, and Ms. Austin separately moved to dismiss the second amended Complaint. ECF Nos. 28, 30. We are addressing the District's and its Transportation entity's, as well as Ms. Austin's, specific challenges to the sufficiency of the plead claims for the first time.

[45] ECF No. 27 ¶¶ 59–70. Ms. Doe and R.S. mention a procedural due process claim but do not plead facts about a process the School District or its Transportation entity denied Ms. Doe and R.S. *See id.* ¶ 61.

[46] *Id.* ¶ 65.

[47] *Id.* ¶ 68.

[48] ECF No. 28-1 at 7–8.

[49] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

[50] *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

[51] *Id.*

[52] *Id.*

[53] *Rogers v. Pocono Mountain E. High Sch.*, No. 21-2072, 2022 WL 3142352 (M.D. Pa. Aug. 5, 2022).

[54] *Id.* at *1.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.* at *9.

[59] *Id.* at **9, 13.

[60] *Mosser v. McWilliams*, No. 23-1785, 2023 WL 6447287 (E.D. Pa. Oct. 3, 2023).

[61] *Id.* at *1.

[62] *Id.*

[63] *Id.*

[64] *Id.* at *8.

[65] *Id.*

[66] *Bonham v. Bobersky*, No. 19-709, 2019 WL 5963171 (M.D. Pa. Nov. 13, 2019).

[67] *Id.* at *1.

[68] *Id.*

[69] *Id.* at *2.

[70] *Id.*

[71] *See id.* at *4.

[72] *Id.* at **6–7.

[73] *City of Newark*, 914 F.3d 789 at 798.

[74] *See* ECF No. 27 ¶¶ 59–70.

[75] *Id.* ¶ 74(d). It is unclear whether Ms. Doe has Article III standing in her individual capacity to allege an Individuals with Disabilities Education Act claim against the School District and its Transportation entity.

[76] *Id.* ¶¶ 75–76.

[77] ECF No. 28 at 8.

[78] *J.L. by & through Leduc v. Wyoming Valley W. Sch. Dist.*, 722 F. App'x 190 (3d Cir. 2018).

[79] *Id.* at 192–93 (quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 171 (2017)).

[80] *Id.* 191–92.

[81] *Id.* at 192.

[82] *Id.*

[83] *Id.* at 193.

[84] *Id.*

[85] ECF No. 27 ¶ 74(d).

[86] *Id.* ¶¶ 75–76.

[87] *Id.* ¶¶ 82, 90–91. It is again unclear whether Ms. Doe has Article III standing in her individual capacity to allege a Rehabilitation Act and Americans with Disabilities Act claim against the School District and its Transportation entity.

[88] ECF No. 28-1 at 8–10.

[89] *S.D. by A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119 (3d Cir. 2018).

[90] *Id.* at 121.

[91] *Id.* at 122.

[92] *Id.* at 126.

[93] *Id.* at 125 (citing *Fry*, 580 U.S. at 754–55).

[94] *Id.* at 126.

[95] ECF No. 27 ¶¶ 82, 90–91. Ms. Doe and R.S. also claim the School District and its Transportation entity denied R.S. "the benefit of the educational program (safe school bus transportation)." *Id.* ¶ 95.

[96] *S.D. by A.D.*, 722 F. App'x at 125 (citing *Fry*, 580 U.S. at 754–55).

[97] ECF No. 27 ¶¶ 27, 30.

[98] *Id.* ¶ 30.

[99] *Id.* ¶ 52.

[100] ECF No. 30-1 at 5–13. Ms. Austin describes her striking R.S. as "highly regrettable." *Id.* at 1.

[101] *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001).

[102] *Id.* at 173.

[103] *Rogers*, 2022 WL 3142352 (M.D. Pa. Aug. 5, 2022).

[104] *Id.* at *1.

[105] *Id.* at *11.

[106] *Id.*

[107] *Id.* at **11, 13.

[108] *Mosser*, 2023 WL 6447287 (E.D. Pa. Oct. 3, 2023).

[109] *Id.* at *1.

[110] *Id.*

[111] *Id.* at *7.

[112] *Id.*

[113] *Tucker v. Sch. Dist. of Philadelphia*, No. 19-889, 2019 WL 3802066 (E.D. Pa. Aug. 13, 2019).

[114] *Id.* at *1.

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.* at *3.

[119] ECF No. 27 ¶¶ 27, 52.

[120] We also are not persuaded Ms. Austin may enjoy qualified immunity from a claim of excessive force towards an autistic child less than six years old. Ms. Austin does not offer an undisputed legal basis for us to find an autistic child on a bus does not have a clearly established right to be free from excessive force by state actors on the school bus. Our Court of Appeals considers qualified immunity defenses to excessive force claims "highly individualized and fact specific." *Anthony v. Seltzer*, 696 F. App'x 79, 81 (3d Cir. 2017) (affirming denial of a motion to dismiss an excessive force claim on qualified immunity grounds). Children challenged by emotional disorders have a clearly established right to be free from excessive force by state actors on the school bus. *Bonham*, 2019 WL 5963171 at *6 (M.D. Pa. Nov. 13, 2019).

[121] *Id.* ¶¶ 100–05.

[122] ECF No. 30-1 at 13.

[123] *Kee Action Sports LLC v. Valken Inc.*, No. 12-6069, 2013 WL 6633439 at *7–8 (D.N.J. Dec. 17, 2013) (allowing pleaded claims to proceed absent a challenge the claims' sufficiency).